OPINION
{¶ 1} William Shull ("Shull") appeals the October 3, 2002 judgment entry of the Lake County Court of Common Pleas entering the jury's verdict in favor of Dr. Abdul Itani ("Dr. Itani"). For the reasons set forth below, we affirm the decision of the trial court in this matter.
 {¶ 2} On April 20, 1999, Shull was admitted to Lake East Hospital ("Lake East") complaining of severe neck pain. Shull was transferred to Lake West Hospital. On April 21, 1999, Dr. Itani performed surgery on Shull, which required a C4-6, C5-7 posterior cervical fusion. In the surgical procedure, Dr. Itani used cement and wire in stabilizing the neck.
 {¶ 3} About three weeks after the surgery, Shull was involved in a motor vehicle accident. Shull was a passenger in a vehicle that was broadsided by another vehicle. After this accident, Shull sought treatment at Lake East, complaining of sharp neck pain. Approximately one month following the accident, Shull first observed lumps in his neck.
 {¶ 4} At some point, Shull was involved in another motor vehicle accident in Kentucky where the vehicle in which Shull was traveling was rear-ended at 45 m.p.h. The severity of this accident caused Shull to aggravate his neck and caused him to suffer a collapsed lung.
 {¶ 5} On October 12, 2001, Shull filed a medical malpractice suit against Dr. Itani. A two day jury trial was held on the matter beginning on September 30, 2002. Shull proffered expert testimony from Dr. Daniel Sullivan ("Dr. Sullivan"). Dr. Sullivan opined that Dr. Itani breached the standard of care by not taking an MRI or CAT scan with a myelogram of Shull's neck prior to surgery. Dr. Sullivan further opined that Dr. Itani breached the standard of care in performing the surgery by utilizing cement and wire to stabilize the neck.
 {¶ 6} Dr. Itani proffered expert testimony from Dr. Terence Lichtor ("Dr. Lichtor"). Dr. Lichtor testified that because of the circumstances of the case, Dr. Itani did not breach the standard of care by failing to perform an MRI or CAT scan with a myelogram. Moreover, Dr. Lichtor opined that, although he personally does not utilize cement in similar type surgeries, Dr. Itani did not breach the standard of care in doing so.
 {¶ 7} In his case in chief, Shull also proffered testimony from Dr. Gary Stabler ("Dr. Stabler"), Shull's family doctor. Dr. Stabler testified regarding Shull's medical history and treatment. On direct examination, Dr. Stabler testified about a medical report ("the report") he prepared upon request from Shull's attorney for another trial. In this report, Dr. Stabler concluded that "Mr. Shull's persistent cervical pain is a direct and proximate result of his cervical spine changes which have been documented radiographically since the date of the [first motor vehicle] accident." During Dr. Stabler's direct testimony at the trial of this matter, the following exchange occurred:
 {¶ 8} "Q. And did [the MRI taken after the first motor vehicle accident] reveal any problems in his cervical spine?
 {¶ 9} "A. Well, I would have to see the report, you know, before, I can't really, I don't have it memorized but it did reveal some degenerative changes and, of course, the loss of curvature of the spine.
 {¶ 10} "Q. Okay. It indicated there was a loss of the normal curvature of the spine?
 {¶ 11} "A. Yes.
 {¶ 12} "Q. So it did document something that was wrong in the neck, correct?
 {¶ 13} "A. Yes.
 {¶ 14} "Q. So subsequent to the accident there were some changes in his neck or something that had been documented radiographically, correct?
 {¶ 15} "A. Are you talking about the car accident?
 {¶ 16} "Q. The MRI, correct.
 {¶ 17} "A. Okay.
 {¶ 18} "Q. It was done after the car accident?
 {¶ 19} "A. Okay, yes.
 {¶ 20} "Q. And let me ask you this, Doctor, do you know what caused those changes?
 {¶ 21} "A. What caused the loss of curvature you mean?
 {¶ 22} "Q. All those things, correct.
 {¶ 23} "A. I would assume it was the fact that he underwent spinal surgery which is, you know, commonly causes the loss of curvature."
 {¶ 24} Moreover, on cross examination, Dr. Stabler testified as follows:
 {¶ 25} "Q. * * * [I]t was your impression in this report that you did for [Shull's attorney] that the alignment of Mr. Shull's spine after surgery was reasonable?
 {¶ 26} "A. Yes.
 {¶ 27} "* * *
 {¶ 28} "Q. And isn't it true that the, that the thrust of this report is that Mr. Shull's pain and Mr. Shull's problems arose from that automobile accident?
 {¶ 29} "A. At that time, yes."
 {¶ 30} The jury returned a verdict in favor of Dr. Itani on all issues. Thus, the trial court entered judgment in favor of Dr. Itani on October 3, 2002. Shull timely appealed this judgment and asserts the following assignments of error:
 {¶ 31} "[1.] The jury's verdict in favor of appellee was contrary to the manifest weight of the evidence and resulted in a manifest miscarriage of justice.
 {¶ 32} "[2.] The trial court erred as a matter of law when it permitted admission of hearsay evidence in the form of an expert report of Dr. Gary Stabler when appellant had no opportunity to cross examine Dr. Stabler on said hearsay."
 {¶ 33} In his first assignment of error, Shull argues that a "thorough review of the testimony of the two experts would leave little doubt that Appellee breached the applicable standard of care."
 {¶ 34} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus. In reviewing a manifest weight argument, the "determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal * * *." Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 81. The weight to be given the evidence deduced at trial and the credibility of the witnesses is within the purview of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 35} In this case, the parties proffered conflicting expert testimony. "Conflicting testimony, including differing opinions offered by expert witnesses, merely places the credibility of the witnesses in issue." State v. Samatar, 152 Ohio App.3d 311,2003-Ohio-1639, at ¶ 44; see, also, Kitchen v. Wickliffe CountryPlace (July 13, 2001), 11th Dist. No. 2000-L-051, 2001 Ohio App. LEXIS 3191, at *17 ("Where conflicting testimony exists, the question of credibility of the witnesses is left to the jury for resolution, and the jury is free to reject some or all of the evidence presented by each side."). This is a matter clearly within the purview of the trier of fact. DeHass,10 Ohio St.2d 230, paragraph one of the syllabus. Our role is not to offer an opinion as to which expert was more persuasive. Traylor v.Davidson (July 13, 2001), 11th Dist. Nos. 2000-T-0032, 2000-T-0041, 2001 Ohio App. LEXIS 3193, at *9. Rather, we are restricted to determining whether the judgment was supported by competent and credible evidence.
 {¶ 36} Where both parties present conflicting expert testimony, we are loath to substitute our judgment regarding the credibility and persuasiveness of the evidence for that of the trier of fact. See, id. at *7-*9; Samatar, 2003-Ohio-1639, at ¶ 44. Since Dr. Itani proffered competent and credible evidence, in the form of expert testimony, to support his contention that he did not breach the standard of care in his treatment of Shull, we cannot find that the verdict was against the manifest weight of the evidence. See, Traylor, 2001 Ohio App. LEXIS 3193, at *7-9*; Steffy v. Blevins, 10th Dist. No. 02AP-1278, 2003-Ohio-6443, at ¶ 41.
 {¶ 37} Thus, Shull's first assignment of error is without merit.
 {¶ 38} Shull claims in his second assignment of error that Dr. Stabler's medical report was inadmissible hearsay. Shull argues that Dr. Stabler was not qualified to testify as an expert in this matter. Shull also asserts that he was prejudiced by the admission of this report because he was unable to cross-examine Dr. Stabler regarding this report.
 {¶ 39} Evidentiary rulings are within the discretion of the trial court and will not be overturned absent an abuse of discretion. State v. Long (1978), 53 Ohio St.2d 91, 98. An abuse of discretion consists of more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169 (citation omitted). Reversal, under an abuse of discretion standard, is not warranted merely because appellate judges disagree with the trial judge or believe the trial judge erred. Id. Reversal is appropriate only if the abuse of discretion renders "the result * * * palpably and grossly violative of fact and logic [so] that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." State v. Jenkins (1984),15 Ohio St.3d 164, 222 (citation omitted).
{¶ 40} The record reveals that the trial court did not admitthe report as an expert report. Rather, the record indicates thatthe trial court admitted the report as a prior inconsistentstatement. Thus, Dr. Stabler's qualifications as an expert areimmaterial.
 {¶ 41} When a prior inconsistent statement is admitted assubstantive evidence, the party against whom the statement isoffered has the right to cross-examine the declarant. Evid.R.801(D)(1). When the statement is admitted for impeachmentpurposes, however, the party against whom the prior inconsistentstatement is offered is not entitled the opportunity tocross-examine the declarant. Evid.R. 613. In this case, the priorinconsistent statement was admitted under Evid.R. 613 and, thus,Shull's inability to cross-examine Dr. Stabler is irrelevant.
 {¶ 42} The credibility of a witness may be attacked by anyparty by use of a prior inconsistent statement. Evid.R. 607(A);Evid.R. 613(A). Since the report containing the priorinconsistent statement was not admissible as substantiveevidence,[1] extrinsic evidence of the report, i.e. thereport itself, only is admissible "[i]f the statement is offeredsolely for the purpose of impeaching the witness, the witness isafforded a prior opportunity to explain or deny the statement andthe opposite party is afforded an opportunity to interrogate thewitness on the statement or the interests of justice otherwiserequire; [and,] [t]he subject matter of the statement is * * *[a] fact that is of consequence to the determination of theaction other than the credibility of a witness." Evid.R. 613(B).
 {¶ 43} In this case, the report was offered for the purpose ofimpeaching Dr. Stabler. Dr. Stabler was afforded the opportunityto explain the report and, in fact, extensively did so on directexamination, as well as on re-direct examination. Moreover, Shulladdressed the report in detail in his examination of Dr. Stablerand, thus, Shull was given the opportunity to interrogate thewitness regarding the report. Finally, the subject matter of thereport, i.e. the cause of Shull's pain and problems in his spine,was of consequence to the determination of this action. Thus, wefind that the trial court did not abuse its discretion inadmitting the report.
 {¶ 44} Moreover, even if we concluded the trial court erred in admitting the report, the admission of inadmissible extrinsic evidence may be harmless. State v. Kimbrough (July 9, 1999), 11th Dist. No. 97-L-274, 1999 Ohio App. LEXIS 3252, at *29. Since Dr. Stabler's admissible testimony detailed the contents of the report, any potential error in the admission of the report would be harmless. See In re Anthony, 11th Dist. No. 2002-A-0096, 2003-Ohio-5712, at ¶ 30 (citations omitted); In re Thurlby
(June 15, 2001), 11th Dist. No. 2000-A-0088, 2001 Ohio App. LEXIS 2714, at *14 ("The erroneous admission of * * * evidence is harmless if additional information, separate and apart from the erroneously admitted evidence, has been offered to prove that which the challenged evidence was offered to prove."); In re S
(1995), 102 Ohio App.3d 338, 343 ("appellants must demonstrate not only that there was error but that such error operated to their prejudice"). The trial court, therefore, did not abuse its discretion in admitting the report.
 {¶ 45} Shull's second assignment of error is without merit.
 {¶ 46} For the foregoing reasons, we hold that Shull's assignments of error are meritless. The decision of the Lake County Court of Common Pleas is affirmed.
Judgment affirmed.
O'Neill and Rice, JJ., concur.
[1] A prior inconsistent statement is admissible as substantive evidence if the witness is subject to cross-examination and the inconsistent statement was given under oath. Evid.R. 801(D)(1)(a). In this case, the report was not given under oath and, thus, was not admissible as substantive evidence under Evid.R. 801(D)(1)(a); State v. Kimbrough (July 9, 1999), 11th Dist. No. 97-L-274, 1999 Ohio App. LEXIS 3252, at *28.