OPINION
{¶ 1} Appellant, Carol Lambert, administrator of the estate of Kilmer Lambert, deceased, appeals from a final judgment of the Ashtabula County Court of Common Pleas following a jury trial resulting in a jury verdict in favor of appellees, Archie S. Wilkinson, M.D., et al. We affirm. *Page 2 
 {¶ 2} In August 2002, Mr. Kilmer Lambert began treating with Appellee Gregory Brant, D.O., for back pain.
 {¶ 3} On December 5, 2003, Mr. Lambert again presented to Dr. Brant's office where he complained to the medical assistant of chest pain. Dr. Brant testified that Mr. Lambert indicated his discomfort was usually present after eating, and the pain began approximately three weeks prior. After a physical examination, Dr. Brant concluded that Mr. Lambert was likely suffering from gastroesophageal reflux disease ("GERD"). In addition, Dr. Brant wrote a prescription for Mr. Lambert to have an EKG, which was performed the same day at a local hospital. The EKG indicated "nonspecific ST-T abnormalities. Correlate with cardiac enzymes and clinically." According to the testimony of Dr. Brant, the results of the EKG could have indicated ischemia, a lack of blood flow through the coronary arteries, which would indicate coronary artery disease. However, Dr. Brant did not order a stress test or refer Mr. Lambert to a cardiologist.
 {¶ 4} On December 12, 2003, Mr. Lambert had an appointment scheduled at Dr. Brant's office. Mr. Lambert cancelled the appointment. On December 16, 2003, another appointment was scheduled at Dr. Brant's office. Again, Mr. Lambert cancelled the appointment.
 {¶ 5} On December 18, 2003, Mr. Lambert returned to Dr. Brant's office indicating that he was still having "heartburn," but it was more prevalent in the morning. This complaint is consistent with GERD, for which Mr. Lambert was taking medication. At this visit, Dr. Brant testified that he advised Mr. Lambert to undergo a cardiolite-exercise-treadmill test, which Mr. Lambert refused. Further, Dr. Brant testified that he did not write out a prescription for the cardiolite-exercise-treadmill test because Mr. Lambert refused to undergo such a test. *Page 3 
 {¶ 6} Following this office visit, Mr. Lambert transferred his care to Appellee Archie Wilkinson, M.D., a board-certified family medicine physician. Dr. Wilkinson treated Mr. Lambert for the next five months.
 {¶ 7} Dr. Wilkinson testified that he first examined Mr. Lambert on February 13, 2004, at a scheduled office appointment. Prior to this appointment, Dr. Brant transferred Mr. Lambert's chart to Dr. Wilkinson, including the December 18, 2003 office note reflecting Mr. Lambert's refusal to undergo a cardiolite-exercise-treadmill test.
 {¶ 8} On said date, Dr. Wilkinson conducted a physical examination. The medical records and testimony at trial revealed that Mr. Lambert had a family history of cardiac problems, history of smoking, long history of consuming alcohol, poor diet, sedentary lifestyle, lack of exercise, and obesity, all of which increase the risk of stroke, heart attack, and high blood pressure. Dr. Wilkinson further testified that he advised Mr. Lambert to schedule a comprehensive physical examination due to his concern for Mr. Lambert's cardiac status. Dr. Wilkinson testified that Mr. Lambert refused his advice to undergo a comprehensive physical examination, which would include a complete physical examination, blood testing, a referral to a cardiologist for evaluation, and a cardiac stress test based on the results of the examination.
 {¶ 9} At the next appointment, on February 27, 2004, Dr. Wilkinson testified that he again advised Mr. Lambert to undergo a comprehensive physical examination. Mr. Lambert did not undergo a comprehensive physical examination.
 {¶ 10} On March 26, 2004, Mr. Lambert presented to Dr. Wilkinson's office for a follow-up. At this office visit, Dr. Wilkinson testified that he recommended to Mr. Lambert that he have an esophagogastroduodenoscopy ("EGD") performed, which *Page 4 
would investigate his gastrointestinal complaints. Mr. Lambert refused this course of treatment.
 {¶ 11} Mr. Lambert's next scheduled appointment was on April 22, 2004. However, Mr. Lambert cancelled the scheduled appointment and did not reschedule.
 {¶ 12} On May 10, 2004, appellant, Carol Lambert, called the office of Dr. Wilkinson to request a prescription for her husband's GERD. An office employee of Dr. Wilkinson indicated to appellant that Mr. Lambert had been taking the prescription too long without a follow-up and that he needed to be seen by Dr. Wilkinson or Dr. Kondru, a gastroenterologist. Appellant did not schedule an appointment for Mr. Lambert. That evening, Mr. Lambert died at the age of 47 of a massive heart attack.
 {¶ 13} On March 15, 2005, appellant filed a complaint alleging medical negligence and wrongful death against Dr. Brant and his practice, Convenient Care Ltd., and Dr. Wilkinson. Appellant claimed that Drs. Brant and Wilkinson negligently failed to properly diagnose Mr. Lambert's cardiac disease from December 2003 to May 2004. As a result, Mr. Lambert suffered a fatal heart attack on May 10, 2004.
 {¶ 14} Appellant amended the complaint to include a cause of action for punitive damages against Dr. Brant and Convenient Care Ltd. for spoliation of evidence. Appellant alleged that Dr. Brant had altered Mr. Lambert's medical chart by adding a medical record after the lawsuit was filed. This alteration, appellant claims, supported Dr. Brant's defense of Mr. Lambert's noncompliance and refusal of treatment.
 {¶ 15} The instant case proceeded to a jury trial on February 6, 2007. The jury, on February 21, 2007, answered an interrogatory finding that Drs. Brant and Wilkinson had met the standard of care in all respects. As a result, the jury was not required to address the issues of proximate causation or damages. Moreover, since the jury did *Page 5 
not find in favor of appellant on the medical malpractice issue, it did not reach the issue of punitive damages.
 {¶ 16} Appellant filed a timely notice of appeal and as her first assignment of error states:
 {¶ 17} "The trial court erred in granting a lesser number of peremptory challenges to the appellant than the appellees for voir dire creating an unlevel playing field."
 {¶ 18} Civ. R. 47(B)[1] provides, in pertinent part:
 {¶ 19} "In addition to challenges for cause provided by law, each party peremptorily may challenge three prospective jurors. If the interests of multiple litigants are essentially the same, `each party' shall mean `each side.'"
 {¶ 20} Appellant argues that the trial court violated Civ. R. 47(B) when it granted her three peremptory challenges but granted Drs. Brant and Wilkinson three peremptory challenges each, for a total of six peremptory challenges. In her brief, appellant contends that out of fairness, the trial court should have allowed her the same number of peremptory challenges since she was "basically trying two distinct medical malpractice actions in one jury trial." Thus, as appellant argues, the trial court's denial of her request for an equal six peremptory challenges "to level the playing field was manifestly unjust, contrary to well-established Ohio law and a denial of the right to a fair trial." We disagree.
 {¶ 21} To support her contention, appellant cites to Layne v. GAFCorp. (1988), 42 Ohio Misc.2d 19. However, while we acknowledge the ruling of the Layne court, we *Page 6 
recognize that the decision is a published judgment entry of the Cuyahoga County Court of Common Pleas, which is not persuasive nor binding on this court.
 {¶ 22} More importantly, the Supreme Court of Ohio reiterated the majority view on this particular issue in LeFort v. Century 21-MaitlandRealty Co. (1987), 32 Ohio St.3d 121. In LeFort, the Supreme Court of Ohio considered whether the trial court violated Civ. R. 47(B) by granting three peremptory challenges to each of the two defendants. The Supreme Court of Ohio noted that in Nieves v. Kietlinski (1970),22 Ohio St.2d 139, it adopted the ruling in Chakeres v. Merchants MechanicsFederal S. L. Assn. (1962), 117 Ohio App. 351. LeFort v. Century21-Maitland Realty Co., 32 Ohio St.3d at 125. The Chakeres Court noted:
 {¶ 23} "`Under statutes which allow a specific number of challenges to "each party," the majority view is that those who have identical interests or defenses are to be considered as one party and therefore only collectively entitled to the number of challenges allowed to one party by the statute. * * * However, if the interests of the parties defendant are essentially different or antagonist, each litigant is ordinarily deemed a party within the contemplation of the statute and entitled to the full number of peremptory challenges. * * *'"LeFort, supra, at 125, quoting Chakeres, supra, at 355.
 {¶ 24} Based on this reasoning, the Supreme Court of Ohio determined that no prejudice resulted from the trial court's granting of three peremptory challenges to each defendant in LeFort. Id. TheLeFort Court reasoned that each defendant filed separate replies and defenses; each defendant was represented by its own counsel; each defendant could "attempt to prove that its conduct did not constitute negligent misrepresentation;" and each defendant could be absolved from liability independently. Id. *Page 7 
 {¶ 25} In an apposite case, the Fifth District Court of Appeals, inHuth v. Shubert (June 21, 1993), 5th Dist. No. CA-9062, 1993 Ohio App. LEXIS 3165, at *8, determined the trial court did not err when it granted the appellant a total of three preemptory challenges while granting three peremptory challenges to each defendant. TheHuth court reasoned that each defendant was represented separately and defended separately; the appellant filed a malpractice action against both appellees but only asserted a fraud claim and prayer for punitive damages against one of the appellees; and the theory of appellant's case "was to pit the opinion of [one appellee] against the opinion of [the other] appellee." Id. at *9-10.
 {¶ 26} In the instant matter, the trial court provided the following explanation when rendering its decision on appellant's "motion to set the same number of peremptory challenges for plaintiff and defense:"
 {¶ 27} "Upon due consideration of the arguments of the parties, the Court, therefore, orders that Defendant, Gregory C. Brant, D.O., and the Convenient Care Ltd., be granted three peremptory challenges jointly. It is further ordered that Defendant, Archie S. Wilkinson, M.D., be granted three peremptory challenges, as the Court finds that the claims against Defendant Wilkinson and Defendant Brant are separate claims, that each Defendant hired separate counsel, and that the claims of the Plaintiff could be sustained or rejected against each of these separate Defendants. Therefore, the Defense side of the case will have a total of six peremptory challenges. It is further ordered that the Plaintiff, Carol Lambert, Administrator, will be granted three peremptory challenges, but will not be granted an additional three peremptory challenges to equal the number which may be exercised by the Defense. The Civil Rules, specifically Civil Rule 47(B), makes no provision for each side of the lawsuit having an equal number of *Page 8 
peremptory challenges, and this Court is obligated to follow the Civil Rules of Procedure. * * *"
 {¶ 28} After a review of the record, it is clear that the trial court did not err in granting an unequal number of peremptory challenges to appellant. The complaint and the amended complaint demonstrate that appellant alleged medical negligence against Drs. Brant and Wilkinson, but only alleged spoliation of evidence against Dr. Brant. Further, Drs. Brant and Wilkinson treated Mr. Lambert during different time periods, to wit: Dr. Brant treated Mr. Lambert from August 2002 into December 2003, while Dr. Wilkinson treated Mr. Lambert from February 2004 until May 2004. As demonstrated by the affirmative defenses asserted by Drs. Wilkinson and Brant, it was in each party's interest to limit or exculpate them of any liability. As such, Dr. Wilkinson sought contribution from Dr. Brant and any other person who may be liable in tort for Mr. Lambert's alleged injuries and damages, while Dr. Brant alleged that any and all damages or injury of Mr. Lambert were not caused by him, but by an intervening act. Moreover, Drs. Brant and Wilkinson filed separate answers; asserted different affirmative defenses; and were represented by separate counsel.
 {¶ 29} We further note that although appellant alleges she suffered prejudice from only being granted three peremptory challenges to Drs. Brant and Wilkinson's six, she did not submit the record of voir dire to this court for review. Without the record of voir dire, it is not possible for us to determine whether the parties exercised their allocated number of peremptory challenges. As stated by the Supreme Court of Ohio, "[t]he duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to *Page 9 
matters in the record." Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199. Therefore, based on the foregoing, appellant's first assignment of error is without merit.
 {¶ 30} Appellant's second assignment of error alleges:
 {¶ 31} "The trial court erred in prohibiting the admission of evidence of certain evidence [sic] to impugn the credibility of Appellee Gregory Brant, DO and to support appellant's spoliation of evidence claim."
 {¶ 32} Under this assignment of error, appellant asserts six sub-assignments of error, which allege the trial court erred when it precluded the following at trial:
 {¶ 33} 1. Evidence of Dr. Brant's medical license suspension and his subsequent probation;
 {¶ 34} 2. Evidence of Dr. Brant's prior medical records alteration;
 {¶ 35} 3. Evidence of Dr. Brant's habit and custom of dishonest acts via testimony of his former employees, Cheryl Throop and Alicia Taggart;
 {¶ 36} 4. Evidence of Dr. Brant previously lying under oath;
 {¶ 37} 5. Evidence that Dr. Brant lied on an application to QualChoice to continue as a medical provider under their umbrella as based upon the deposition testimony of his office manager that he did lie on the application by stating that his license was never suspended as she typed the application; and
 {¶ 38} 6. Evidence of Dr. Brant's involvement as a Defendant in the pending case of Interlake Steamship Company v. Andrew Cunningham in which it was alleged that Dr. Brant altered patient records.
 {¶ 39} It is appellant's contention "that the probative value substantially outweighed any prejudicial effect as to each of these subject areas alone, and certainly *Page 10 
all of these together." Further, appellant asserts that the denial of the inquiry into these areas by the trial court directly prejudiced her case.
 {¶ 40} "The trial court has broad discretion in the admission and exclusion of evidence." State v. Hymore (1967), 9 Ohio St.2d 122, 128. The trial court's decision on whether to admit or exclude evidence will be upheld absent an abuse of discretion. Shull v. Itani, 11th Dist. No. 2002-L-163, 2004-Ohio-1155, at ¶ 39. "The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. A judgment will not be reversed on appeal unless the trial court has abused its discretion and a party has been materially prejudiced.Davis v. Killing, 171 Ohio App.3d 400, 2007-Ohio-2303, at ¶ 11. (Citation omitted.) Therefore, we must first make a determination as to whether the trial court abused its discretion when it ruled to exclude the introduction of evidence at trial. Then, if we determine that the trial court did abuse its discretion, we must resolve whether the substantial rights of appellant were undermined in excluding the evidence.
 {¶ 41} "All relevant evidence is admissible, except as otherwise provided by [federal and state law.]" Evid. R. 402. "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. Nevertheless, "[although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid. R. 403(A). Also, it is in the trial court's discretion to exclude relevant evidence "if its probative value is substantially *Page 11 
outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Evid. R. 403(B).
 {¶ 42} In addition, subject to certain exceptions, Evid. R. 404(A) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion * * *." However, Evid. R. 404(B) permits using other-acts evidence for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Evid. R. 404 is applicable in civil cases. Weissenberger's Ohio Evidence Treatise (2007) 135, Section 404.4. See, also, State v. Mason (1998), 82 Ohio St.3d 144,160.)
 {¶ 43} In rendering its decision as to each of the issues enumerated above, the trial court repeatedly indicated that it was not going to permit a "character assassination" of Dr. Brant or Mr. Lambert. While the trial court observed that the evidence may to some respect be relevant to the credibility of Dr. Brant, the probative value of the evidence was substantially outweighed by its prejudicial effect.
 {¶ 44} Appellant first argues that the trial court erred when it excluded evidence of Dr. Brant's license suspension, his subsequent probation, and the facts underlying his criminal conviction and medical license suspension. Although appellant submits this allegation as two separate sub-assignments of error, we will consider them together as they are interrelated.
 {¶ 45} In 2000, Dr. Brant was issued a citation based upon his guilty pleas of two misdemeanor counts of obstructing official business, a violation of R.C. 2921.31(A). An investigation was conducted by the State Medical Board and, subsequently, the board stayed a permanent revocation of Dr. Brant's medical license, subject to a 30-day *Page 12 
suspension of his medical license and a three-year probationary period. Dr. Brant's three-year probationary period was terminated by the State Medical Board in November 2003. Dr. Brant's conviction of obstructing official business was expunged prior to trial. Appellant concedes that Evid. R. 609 prohibited her from inquiring into the conviction of Dr Brant; however, appellant contends that the trial court should have permitted her to question Dr. Brant concerning the suspension of his medical license and the underlying facts of his medical license suspension and criminal convictions.
 {¶ 46} The trial court, in a judgment entry dated February 5, 2007, determined that since Dr. Brant's conviction had been expunged, appellant "was not permitted to offer evidence of [his] conviction or any of the underlying facts thereof, as the Court finds that once the conviction is expunged, it may [no] longer be used as evidence or used to impeach a witness." Then, during proffer, the trial court further stated:
 {¶ 47} "It's my understanding Dr. Brant has had some legal entanglements with Medicare or Medicaid — that was my understanding.
 {¶ 48} "* * *
 {¶ 49} "A lot of that was over the billing. Bills that he sent out. This was in the early 2000's. I think. There's some talk here about a deposition that was taken before the Medical Board, and I told the plaintiffs, I said the mere fact that Mr. Brant had some legal entanglements early in the year — early in the decade back in 2000 that dealt with his billing procedures in the office doesn't mean that he changed any records here, that he didn't follow the standard of care, and I wasn't going to permit a character assassination of the defendants either. * * *
 {¶ 50} "* * * *Page 13 
 {¶ 51} "And the fact that he may have had some legal entanglements on his billing with Medicaid in my opinion just doesn't relate to this case, so I've not permitted it. * * *
 {¶ 52} "* * *
 {¶ 53} "And I'm not going to open a Pandora's box and sit here for the next week and explain everything that happened back in 2000 before the Medical Board, because it's not relevant in this case. So that's basically where I'm coming from."
 {¶ 54} First, we agree with the trial court that questions posed to Dr. Brant concerning his medical license suspension and the underlying facts were not relevant to the issues at hand. See Evid. R. 401 and 402. As documented by the trial court, the suspension of Dr. Brant's medical license centered on the billing procedures he employed and accordingly was not applicable to appellant's spoliation of evidence claim. Rather, the admission of such evidence could do nothing more than prejudice the minds of the jurors.
 {¶ 55} Moreover, appellant argues that this evidence is "completely relevant to his [Dr. Brant's] credibility." Here, appellant was not attempting to elicit this testimony to prove any other matter but only to suggest that Dr. Brant had the propensity to be dishonest. This type of evidence constitutes inadmissible character evidence; as such, it was proper for the trial court to not allow appellant to question Dr. Brant regarding the suspension of his medical license, the underlying facts of his medical license suspension, and his criminal convictions.
 {¶ 56} Appellant also argues that Dr. Brant's former employees, Cheryl Throop and Alicia Taggart, were entitled to testify relating to "[Dr. Brant's] routine practice of altering medical records including direct requests that he made to Ms. Throop that she *Page 14 
alter piles of patient medical records so that he would avoid criminal penalty." Appellant maintains that the testimony of the former employees was direct evidence of Dr. Brant's habit and routine of alteration of records and dishonesty.
 {¶ 57} At trial, Ms. Throop testified that she was employed as a medical assistant by Dr. Brant from 1991 through 1998. Also, Ms. Taggart testified that she was employed as a medical assistant by Dr. Brant in the mid-1990s. While Ms. Throop and Ms. Taggart testified that Dr. Brant had a reputation for being dishonest, the trial court did not allow them to testify as to any specific instances of conduct relating to the alteration of medical records. With respect to the testimony of Ms. Throop and Ms. Taggart, the trial court issued a February 5, 2007 judgment entry, which stated:
 {¶ 58} "The Court finds that the testimony of these witnesses, who have not been employed by Defendant Brant since 1997, does not tend to prove or disprove any issue in this case, including possible habit or routine of Dr. Brant in altering or falsifying patient's records. Therefore, the witnesses, Cheryl Throop and Alicia Taggart, will not be permitted to testify on the issues of habit or routine of Dr. Brant in falsifying records."
 {¶ 59} The trial court further elaborated on its reasoning related to this issue after the testimony of Ms. Throop at trial by stating:
 {¶ 60} "All right, I think the Court did put a judgment entry. I don't know how much I explained in the judgment entry. But basically I think this testimony is remote. I think in the documents I saw that it was indicated that she [Ms. Throop] had left the employ of Convenient Care in 1997. Now she moved that back a year to `98. But it's some six, seven years ago.
 {¶ 61} "You know, testimony that he took files home before they were released, that, that doesn't prove that he's altering or changing things. *Page 15 
 {¶ 62} "* * *
 {¶ 63} "So you know, the evidence I've heard is that he's — if that was the old procedure, he's changed it since he had all this trouble with the law in the late `90's and early 2000's. But anyway, it's remote. You know, what he did in the middle `90's, I don't think, is probative of what he might be doing in 2003 and—4. So I have issued a judgment, and I'm not permitted that evidence on habit and traits."
 {¶ 64} The trial court reiterated this line of reasoning with respect to the testimony of Ms. Taggart.
 {¶ 65} Evid. R. 406, which pertains to habit evidence, provides:
 {¶ 66} "Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."
 {¶ 67} "Evidence of habit requires a showing that the person to whom the habit is attributed performs a repeating act, either involuntarily or so consistently that the probabilities are such that in the absence of direct evidence to the contrary, the trier of fact may infer that the character of the person is such that the act actually occurred as it has so often in the past." State v. Gains, 8th Dist. No. 82301,2003-Ohio-6855, at ¶ 30.
 {¶ 68} Further, "the rationale for the admission of [evidence of habit pursuant to Evid. R. 406] is that habitual acts may become semi-automatic and may tend to prove that one acted in the particular case in the same manner." Cardinal v. Family Foot Care Centers, Inc. (1987),40 Ohio App.3d 181, 182. (Citation omitted.) In general, "habit" is defined "as a customary response to a regularly recurring situation." Sprouse v.Allstate Ins. Co. (Oct. 17, 1989), 10th Dist. No. 89AP-131, 1989 Ohio App. LEXIS 3990, at *9. *Page 16 
 {¶ 69} A review of the record concludes that the trial court did not abuse its discretion in refusing to allow Ms. Throop and Ms. Taggart to testify to specific acts relating to Dr. Brant's "routine practice of altering medical records." Of particular concern at trial was whether Dr. Brant altered or fabricated the medical chart of Mr. Lambert for his December 18, 2003 office visit. As the trial court indicated in its judgment entry and at trial, Ms. Throop and Ms. Taggart were employed by Dr. Brant during the 1990s. While appellant was attempting to establish that a habitual response occurred on a particular occasion, the proffered testimony of Ms. Throop and Ms. Taggart was too remote in time; the practice of Dr. Brant in the 1990s does not necessarily establish the existence of the habit and that the habitual response occurred on or after December 2003.
 {¶ 70} Furthermore, the proffered testimony of Ms. Throop and Ms. Taggart does not rise to the level of habit. As stated, the rationale for permitting habit evidence is that "habitual acts may become semi-automatic and may tend to prove that one acted in the particular case in the same manner." Cardinal, supra, 40 Ohio App.3d, at 182. (Citation omitted.) While the proffered testimony of Ms. Throop and Ms. Taggart would have revealed that Dr. Brant did, on occasion, alter medical records, this does not constitute proof of a regular response to a repeated, factually-specific situation. Based on the foregoing, the trial court properly excluded the proffered testimony of Ms. Throop and Ms. Taggart to illustrate Dr. Brant's "routine practice of altering medical records," since this evidence is typical of impermissible character evidence.
 {¶ 71} Under appellant's fourth sub-assignment of error, she alleges the trial court erred in excluding evidence that Dr. Brant had previously lied under oath. *Page 17 
Appellant maintains that it was "clear from the Court's rulings that Appellant would not be permitted to explore this evidence in light of its overall rulings on the suspension."
 {¶ 72} At trial, appellant proffered the following into the record: "* * * at this point in time whether or not we're allowed to ask him if he, if he's previously lied under oath. We were not permitted to and would have gone into his — the suspension of his medical license and subsequent probation."
 {¶ 73} However, a review of the record reveals that the trial court did not issue a ruling on this particular matter, as evidenced by the following colloquy during cross-examination of Dr. Brant:
 {¶ 74} "Q. Dr. Brant, have you ever lied under oath?
 {¶ 75} "MR. PRISLIPSKY: Objection, Your Honor.
 {¶ 76} "THE COURT: Come up to the Bench.
 {¶ 77} "MS. PETERSON: Can we have a sidebar?
 {¶ 78} "* * *
 {¶ 79} "THE COURT: * * * Yesterday afternoon as we recessed, Dr. Brant was on the stand for — he had been called for cross-examination. I think we were getting near the end of the cross-examination, and there was a question asked of him whether he had ever lied under oath. And at that point we had a short conversation with counsel, and we decided just to defer that issue until this morning, so I guess that's where we're gonna pick up this morning.
 {¶ 80} "I'm going to listen to counsel. We talked about this a little bit last night, and I'm gonna give you one chance to make your record here on this issue.
 {¶ 81} "* * * *Page 18 
 {¶ 82} "I mean, if there's — in other words, if anybody needs to do some more research or anything on this, you could withdraw the question now and just save it and present it later, and you'd have more time to do some research if you need that. If not, I'll listen to you now and I'll make a ruling, and we're going to get on with it, with the case.
 {¶ 83} "So do you want to proceed with it now?
 {¶ 84} "MS. PETERSON: We will withdraw it for now and take it up when he testifies in his case, assuming he does."
 {¶ 85} As evidenced by the record, appellant's counsel clearly withdrew this question, reserving it until Dr. Brant testified on his own behalf. The trial court reiterated this fact during a proffer by stating the following:
 {¶ 86} "Now, we had this issue here this morning whether he lied under oath to the Medical Board, and you've withdrawn the issue. You can present it again later. So I'm not ruling on it."
 {¶ 87} Because Dr. Brant testified only on cross-examination, the trial court did not have an opportunity to make a determination on this particular issue. Accordingly, appellant's argument is not well-taken.
 {¶ 88} In addition, appellant argues that the trial court erred in denying her the ability to present direct evidence or impeach Dr. Brant regarding lying on a medical application. Specifically, appellant claims that when Dr. Brant filled out an application to be a qualified provider under Qualchoice, he indicated that his medical license had never been suspended. At trial, appellant proffered the following into the record: *Page 19 
 {¶ 89} "It is our position that these are specific acts of conduct that are probative of his [Dr. Brant's] character for truthfulness or untruthfulness, and based on Evidence Rule 609 — we should have been permitted to inquire * * *."
 {¶ 90} As a preliminary matter, we note that although appellant cited Evid. R. 609 during her proffer, Evid. R. 608 is the proper vehicle to attack Dr. Brant's credibility with a specific instance of conduct, as appellant attempted to do at trial.[2]
 {¶ 91} Evid. R. 608(B) reads, in pertinent part, as follows:
 {¶ 92} "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness * * *." (Emphasis added.)
 {¶ 93} Under Evid. R. 608(B), the decision to allow such prior instances on cross-examination is within the discretion of the trial court. Weidner v. Blazic (1994), 98 Ohio App.3d 321, 327. (Citation omitted.) Moreover, the trial court's discretion to admit evidence is still subject to Evid. R. 403. Ruff v. Bowden (Mar. 28, 1995), 10th Dist. No. 94APE08-1116, 1995 Ohio App. LEXIS 1311, at *7. (Citation omitted.)
 {¶ 94} In excluding the evidence, the trial court stated:
 {¶ 95} "What I'm afraid of in this case, if I just give both sides carte blanche here to attack and to destroy character, I just open a Pandora's box. Because now, now we have to go back and we have to explain everything that happened in the past. * * * *Page 20 
 {¶ 96} "And you know, it may be relevant to some respect in credibility; but I think the value of the evidence is far outweighed by the prejudice, the probative value, the character assassination. * * *"
 {¶ 97} While this type of evidence is permissible under the evidentiary rules, the record clearly demonstrates that the trial court considered its relevancy and then weighed its probative value against those considerations enumerated in Evid. R. 403(A) and (B). Thus, the trial court did not err in excluding the evidence related to Qualchoice.
 {¶ 98} Appellant also attempted to present this evidence through the testimony of Rebecca Birch, the office manager at Dr. Brant's office, who testified to this fact at her deposition. In effect, appellant was attempting to introduce extrinsic evidence, in the form of Ms. Birch's testimony, in order to expose Dr. Brant's untruthful character. However, Evid. R. 608(B) specifically provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, * * * may not be proved by extrinsic evidence. * * *" Consequently, the trial court did not err in excluding the testimony of Ms. Birch.
 {¶ 99} In her sixth sub-assignment of error, appellant argues that the trial court erred when it excluded evidence of Dr. Brant's involvement as a third-party defendant in a pending lawsuit, which alleges alteration of patient records. Appellant contends that this evidence is part of the "habit and practice exception to specific instances of conduct," and "it was part of the overall story that this physician has engaged in an ongoing pattern of dishonest alteration of medical records that has stretched back over the last decade or so."
 {¶ 100} As previously noted, habit evidence is admissible if the proponent demonstrates that an individual encounters a regular recurring situation with a *Page 21 
customary response. Sprouse v. Allstate Ins. Co., 1989 Ohio App. LEXIS 3990, at *9. Appellant was attempting to introduce this evidence to illustrate that Dr. Brant alters the records of patients. Nevertheless, this type of evidence does not satisfy "habit evidence" as expounded in Evid. R. 406, because appellant cannot point to a specific stimulus that triggers the semiautomatic response.
 {¶ 101} Appellant also advances the claim that the probative value of this evidence substantially outweighs any prejudicial effect. Yet, it is important to recognize that the case appellant desired to introduce was a pending case against Dr. Brant alleging alteration of patient records. Since this evidence was not probative of any issue in the instant case and its admission may result in an improper basis for a jury decision, the trial court did not err in its exclusion.
 {¶ 102} Based on the foregoing analysis, appellant's second assignment of error is not well-taken.
 {¶ 103} In her third assignment of error, appellant alleges:
 {¶ 104} "The trial court erred in precluding appellant's expert from reading from his own learned treatise as substantive evidence."
 {¶ 105} During direct examination, appellant asked her expert witness, Dr. John Sutherland, to read into evidence an excerpt of his article, entitled "Gastroesophageal reflux disease, when antacids aren't enough," published in Postgraduate Medicine in 1991. Dr. Wilkinson's counsel immediately objected, and a bench conference was held. On appeal, appellant alleges that the trial court erred when it sustained Dr. Wilkinson's objection since Dr. Sutherland wrote the article, and the "article demonstrated that the opinions he [Dr. Sutherland] was testifying to at trial were opinions he held years before this case." *Page 22 
 {¶ 106} After the trial court sustained Dr. Wilkinson's objection, appellant did not attempt to proffer the excerpt of Dr. Sutherland's article into evidence. Pursuant to Evid. R. 103(A)(2), "[e]rror may not be predicated upon a ruling which * * * excludes evidence unless a substantial right of the party is affected, and * * * the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. * * *" Thus, in the absence of a proffer, the exclusion of evidence cannot be considered on appeal since this court cannot determine whether the action of the trial court, in sustaining the objection, was prejudicial to appellant. Pokorny v.Local 310 (1973), 35 Ohio App.2d 178, paragraph three of the syllabus (reversed on other grounds).
 {¶ 107} Since appellant did not make a proffer of the excerpt from Dr. Sutherland's article, she is deemed to have waived the error by failing to demonstrate its prejudicial effect. As such, appellant's third assignment of error lacks merit.
 {¶ 108} Appellant's fourth assignment of error states:
 {¶ 109} "The cumulative effect of the trial court's errors was prejudicial and denied appellant a fair trial."
 {¶ 110} Appellant "requests that this Court review its conclusions in assignments of errors one through three to determine if any errors that it determines were not prejudicial individually become prejudicial when combined with all of the other harmless errors." However, "[a]ny error shown upon the record must stand or fall on its own merits and is not aided by the accumulative effect of other claims of error." Nicholas v.Yellow Cab Co. (1962), 116 Ohio App. 402, 412. Furthermore, the cumulative error doctrine is generally not applicable in civil cases.Frost v. Snitzer, 11th Dist. No. 2005-T-0090, 2006-Ohio-3882, at ¶ 107. *Page 23 
 {¶ 111} Since this court has overruled all of appellant's previously stated assignments of error, cumulative error cannot exist. Thus, appellant's fourth assignment of error is without merit.
 {¶ 112} For the foregoing reasons, appellant's proposed assignments of error lack merit and the judgment of the Ashtabula County Court of Common Pleas is hereby affirmed.
CYNTHIA WESTCOTT RICE, J., concurs
COLLEEN MARY O'TOOLE, J., dissents.
[1] We recognize that Civ. R. 47(B) (currently Civ. R. 47(C)) was amended on July 1, 2006. However, for purposes of this appeal, we will refer to current Civ. R. 47(C) as Civ. R. 47(B).
[2] We also note that appellant cited to Evid. R. 608 in her appellate brief. *Page 1