[Cite as *State v. Bickerstaff*, 2015-Ohio-4014.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-A-0054** |
| KYLE M. BICKERSTAFF, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2013 CR 216.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*William P. Bobulsky*, William P. Bobulsky Co., L.P.A., 1612 East Prospect Road, Ashtabula, OH 44004 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Kyle M. Bickerstaff, appeals the judgment of the Ashtabula County Court of Common Pleas, having found him guilty, after a jury trial, of rape, a violation of R.C. 2907.02(A)(1)(b), a felony of the first degree. Appellant was sentenced to serve an indefinite prison term of ten years to life. Based on the following, we affirm.

{¶2} Appellant and his wife, Ashley, married in 2009. After sustaining an injury to his shoulder while in the military in 2010, appellant, along with his wife and son,

decided to travel to Ashtabula in December 2011; appellant had heard that the Veteran Affairs office in the area was more efficient in scheduling surgeries. From December through June 2012, the family resided with Ashley's father and four others in his trailer. Appellant's wife left with their son to return to Tennessee, but appellant remained in Ashtabula with his father-in-law until September 2012.

{¶3} One of the residents staying at the trailer with appellant was his father-in-law's eleven-year-old daughter, T.B. She was staying with her father for the summer and moved into the trailer in June 2012. T.B. testified that while she was staying with her father and three others, including appellant, she and appellant would text each other; she on her iPhone and he on an iPod that she had given to him. She also testified their relationship grew from friendship to intimate. Through the month of June, she testified that she and appellant would cuddle, kiss, and hug each other. This continued until the end of June, when appellant entered her bedroom and began to initiate sexual intercourse. She testified that appellant first began by touching her private parts, removing her clothes, and then had sex with her. She protested appellant's advances as he undressed her and told him to stop, but appellant did not.

{¶4} For the remainder of that summer, appellant continued to visit T.B. in her bedroom and engaged in sexual contact with her one last time on August 21, 2012, the day before she returned to live with her mother. Although she did not tell anyone about these events, her mother discovered the text messages between T.B. and appellant in early September. Her mother then filed a police report over the incidents and had her daughter examined by Christi LaPrairie, a sexual assault nurse examiner, on

2

September 7, 2012. LaPrairie's findings were non-specific and found no injuries, which she considered to be normal in a case of sexual assault for a girl T.B.'s age.

{¶5} At trial, appellant testified he was only alone with T.B. when he would drive T.B. to her mother's home and back, and the only times he entered T.B.'s room were when he was playing with his son. He denied sending the text messages and stated he had never sent any suggestive and overtly improper text messages or electronic mail to T.B. Appellant testified he gave the iPod to another resident at the trailer, Javon Carr, after Carr broke his phone, and that Carr had possession of the iPod throughout the summer. Further, appellant testified he owned a mobile phone in June 2012, which he used exclusively for text messaging and calling, and thus, had no reason to continue using the iPod.

{¶6} Appellant filed a timely notice of appeal and asserts four assignments of error. His first assignment of error states:

{¶7} "The trial court committed prejudicial error by overruling Defendant-Appellant's objections to testimony attributing text messages to Defendant-Appellant and admitting into evidence photographs of said text messages as trial Exhibits A and B."

{¶8} Appellant argues the trial court erred in admitting Exhibits A and B — pictures of the text messages between appellant and T.B. from June 24-28, 2012. Appellant contends the admission of these exhibits violated the Confrontation Clause.

{¶9} The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." The United States Supreme Court, in *Crawford v.*

*Washington*, 541 U.S. 36, 51 (2004), determined the Confrontation Clause "applies to 'witnesses' against the accused — in other words, those who 'bear testimony.'"  The Supreme Court held that the right to confrontation applies to all "testimonial statements." *Id.* at syllabus.  To determine whether a statement is testimonial in nature, the proper inquiry is "'whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.'" *State v. Metter*, 11th Dist. Lake No. 2012-L-029, 2013-Ohio-2039, ¶35, quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir.2004).

> **{¶10}** Where *nontestimonial* hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law — as does [*Ohio v. Roberts*, 448 U.S. 56 (1980)], and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where *testimonial* evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.

*Crawford*, *supra*, at 68 (emphasis added).

**{¶11}**  Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Evid.R. 801(C).  Hearsay is inadmissible at trial unless it falls under an exception to the Rules of Evidence.

**{¶12}**  To support his argument on appeal, appellant cites the Ohio Supreme Court's decision in *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208.  In *Hood*, the cellular telephone records from the defendant and his co-conspirators were admitted into evidence to place the defendant in the vicinity of the crime and to show contact with his co-conspirators.  Although detectives testified they subpoenaed the cellular telephone records from the cellular-phone companies, the subpoenas were not in the

4

record. Defense counsel objected to the use of these records "claiming that the records lacked verification or certification of their authenticity." *Hood, supra*, ¶20. At trial, a detective was called by the prosecution to verify the records were obtained through subpoena and to testify regarding his experience interpreting cell-phone records.

{¶13} In finding the admission of the cell-phone records a constitutional error, the *Hood* Court reasoned:

> Here, there was simply no foundation laid by a custodian of the record or by any other qualified witness. Detective Veverka was not a custodian of the records. He did not prepare or keep the phone records as part of a regularly conducted business activity. Nor was he an 'other qualified witness' under the rule. A 'qualified witness' for this purpose would be someone with 'enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business.' 5 McLaughlin, Weinstein's Federal Evidence Section 803.08[8][a] (2d Ed.2009); *United States v. Lauersen,* 348 F.3d 329, 342 (2d Cir. 2003). Tellingly, in the midst of discussions regarding the lack of authentication of the records, the trial judge remarked, 'My gut reaction is to subpoena Verizon.' That did not happen.
>
> * * *
>
> Thus, the cell-phone records in this case were not authenticated as business records, and that fact affects their status in regard to the Confrontation Clause. If the records had been authenticated, we could be sure that they were not testimonial, that is, that they were not prepared for use at trial. Without knowing that they were prepared in the ordinary course of a business, among the other requirements of Evid.R. 803(6), we cannot determine that they are nontestimonial. We thus find that the admission of the records in this case was constitutional error.

*Id.* at ¶40-42.

{¶14} In this case, however, appellant's cell-phone records were not admitted at trial. Instead, T.B. testified to pictures of text messages between her cell phone and the iPod, which were admitted as Exhibits A and B. T.B. testified that in the summer of

5

2012, she and appellant would text each other; appellant texted T.B's cell phone from an iPod she had provided to him which contained a text messaging application. T.B. further testified that she and appellant would sometimes text each other while sitting in the same room. She would hear his text alert ring as soon as she would send him a text message, and he would then text message her back. She stated they would have conversations regarding these text messages. T.B. identified the light-colored text boxes as being text messages from appellant, while the dark-colored text boxes were text messages she had sent to appellant.

{¶15} Photographs of text messages sent from a defendant are not hearsay pursuant to Evid.R. 801(D)(2); instead, they are "the party's own statements if the statements were properly authenticated." *State v. Shaw*, 7th Dist. Mahoning No. 12 MA 95, 2013-Ohio-5292, ¶43 ("photographs of the text messages can be admissible as an admission by a party-opponent under Evid.R. 801(D)(2)(a) if they are properly authenticated"); s*ee also State v. Roseberry*, 197 Ohio App.3d 256, 2011-Ohio-5921 (8th Dist.).

{¶16} Evid.R. 801(D)(2)(a) deals with admissions by party-opponents and provides:

> (D) *Statements which are not hearsay*. A statement is not hearsay if:
>
> * * *
>
> (2) *Admission by party-opponent.* The statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity[.]

{¶17} In *Roseberry*, the Eighth Appellate District court reasoned that "in most cases involving electronic print media, i.e., texts, instant messaging, and emails, the

6

photographs taken of the print media or the printouts of those conversations are authenticated, introduced, and received into evidence through the testimony of the recipient of the messages." *Roseberry*, *supra*, at ¶75.

{¶18} In *State v. Huge*, the Second Appellate District discussed the authentication of text messages, noting "[t]he burden for authentication under [Evid.R. 901] is not great, and only requires a prima facie showing. * * * The state may meet its burden by demonstrating a reasonable likelihood that the evidence is authentic." *State v. Huge*, 1st Dist. Hamilton No. C-120388, 2013-Ohio-2160, ¶27. In finding the text messages at issue were properly authenticated, the *Huge* court stated:

> We hold that [the victim's] testimony that texting was her normal means of communication with [the appellant], and that the text message had been sent from [the appellant] and saved to [the victim's] phone, was sufficient to authenticate the message under Evid.R. 901. *See State v. Jaros*, 6th Dist. No. L-10-1101, 2011-Ohio-5037, ¶21 (the victim's testimony identifying the text messages on her cellular phone as being sent from the defendant's email address, which she had frequently received emails from and was familiar with, was sufficient to authenticate the text messages under Evid.R. 901). [The appellant's] argument alleging a lack of proof that he had actually sent the message concerns the weight of the evidence, rather than its authenticity.

*Id.* at ¶29.

{¶19} Exhibits A and B, the photographs of the text messages, depict the content of the text messages between appellant and T.B. As previously indicated, T.B., who was the recipient of the text messages, testified to the content and the identity of the text messages. Thus, the text messages at issue were properly authenticated.

{¶20} Accordingly, appellant's first assignment of error is without merit.

{¶21} Appellant's second assignment of error states:

7

**{¶22}** "The trial court committed prejudicial error by sustaining objections by the State of Ohio to defense cross-examination of [T.B.] relative to her history of psychological diagnosis and treatment."

**{¶23}** At trial, T.B.'s mother testified. Defense counsel inquired into whether T.B. had seen a counselor after September 2012, to which T.B.'s mother responded affirmatively. Defense counsel then elicited testimony that T.B., at the age of 5, had been in counseling for a short period of time.

**{¶24}** During T.B.'s testimony, defense counsel inquired: "Specifically, did you put Facebook postings about the history [of] problems that you had?" After sustaining the state's objection, defense counsel proffered the following:

> [I]f I were to have framed the questions to [T.B.] * * * that the answers would have included a series of counseling and psychiatric conditions that preceded the summer of 2012. And then continued after that time. Each of which I would submit reflect upon the witness's credibility and the issues of which occurred or would have been occurring during that period of time. Some of which are fantasies, some of which are antagonisms that include [appellant's] relationship with his wife.

**{¶25}** Evidence Rule 616(B) provides that a witness may be impeached by showing a "defect of capacity, ability, or opportunity to observe, remember, or relate" information. "In appropriate cases psychiatric testimony can be used to impeach a witness whose ability to perceive, remember, or relate events is allegedly impaired by organic illness or a psychiatric disorder." *State v. Wilson*, 8 Ohio App.3d 216, 221 (8th Dist.1982).

**{¶26}** In this case, although appellant proffered that T.B.'s counseling and psychiatric conditions could possibly reflect upon her credibility, the content of the proffer was insufficient because it failed to create a nexus between the fact and the

8

ultimate issue. Specifically, the proffer was not made with regard to the person competent to testify concerning the matter proffered. T.B.'s mother was not identified as a counselor or psychiatrist. Nothing in the record suggests she "diagnosed" a condition that would result in the conclusions proffered by counsel. There is also a failure to specifically identify the nature of the psychiatric treatment, any purported diagnosed disorder, and the effects such disorder would have on T.B.'s veracity. If these specifics were before the trial court, it would have been in a position to conduct an *in camera* inspection of the proffered material and weigh the prejudicial value versus the probative value of the evidence. Without these specifics, the trial court did not err in excluding this line of questioning.

{¶27} Appellant's second assignment of error is without merit.

{¶28} In his third assignment of error, appellant alleges:

{¶29} "The trial court committed prejudicial error by sustaining objections by the State of Ohio to evidence of the criminal history of Javon Carr."

{¶30} Under his third assignment of error, appellant argues the trial court erred in barring the admission of evidence relating to the criminal history of Javon Carr, who appellant testified resided in the trailer during the time period at issue. Appellant maintains that Javon Carr, a convicted rapist, had use of the iPod from which the offending messages were sent to T.B.

{¶31} A "trial court has broad discretion in the admission and exclusion of evidence[.]" *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967). When it is faced with weighing the probative value of evidence against the prejudicial impact, the trial court's decision on whether to admit or exclude such evidence will be upheld absent an abuse

9

of discretion.  *Shull v. Itani*, 11th Dist. Lake No. 2002-L-163, 2004-Ohio-1155, ¶39.  An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'"  *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8 Ed.Rev.2004).

**{¶32}** "All relevant evidence is admissible, except as otherwise provided by [federal and state law]."  Evid.R. 402.  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Evid.R. 401.  Nevertheless, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."  Evid.R. 403(A).  Also, it is within the trial court's discretion to exclude relevant evidence "if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."  Evid.R. 403(B).

**{¶33}** Here, the identity of the individual who allegedly raped T.B. was not in question at trial.  T.B. testified that it was, in fact, appellant who had raped her.  T.B. identified appellant at trial and recounted how their relationship had evolved.  She identified the text messages and explained that the iPod she had given appellant to use contained a texting application.  Although T.B. testified that, at times, Javon Carr would spend the night at the trailer, she stated that Carr never touched her inappropriately.  The trial court did not abuse its discretion by excluding Exhibit 2, the copy of Javon Carr's guilty plea from a prior rape case.  Javon Carr's criminal history was not relevant, primarily because identity was never an issue at appellant's trial; the fact that Carr was

10

previously convicted of rape does not make it more or less probable that appellant raped T.B. While appellant contends that Carr's criminal history is probative with regard to who may have sent the text messages, based on the facts presented at trial, we cannot say the trial court abused its discretion in determining that the probative value of this evidence was outweighed by the potential of unfair prejudice, confusion of the issues, or misleading the jury.

{¶34} Appellant's third assignment of error is without merit.

{¶35} As his fourth assignment of error, appellant alleges:

{¶36} "The trial court committed prejudicial error by overruling Defendant-Appellant's objections to testimony on redirect examination of [T.B.] relative to whether she had told the truth during her testimony."

{¶37} Under this assigned error, appellant argues the trial court erred in permitting T.B. to testify, on redirect examination, over objection that she was telling the truth about what appellant did to her in July and August 2012. Appellant maintains the scope of this question went beyond those matters inquired into on cross-examination. We disagree.

{¶38} On cross-examination, questions were posed to T.B. as to whether she had lied to her mother when first asked if anything had taken place between her and appellant. She indicated that she at first lied and denied that anything took place, but then told her mother what happened.

{¶39} After reviewing the record, we find the trial court was within its discretion to permit T.B. to answer whether she was telling the truth following appellant's cross-examination. On cross-examination, appellant attacked the credibility of T.B. and

11

clearly put her veracity in issue. Questioning to confirm T.B. was being truthful was proper redirect examination. *State v. Thomas,* 12th Dist. Warren No. CA2010-10-099, 2012-Ohio-2430, ¶15. ("As to the scope of redirect examination, it is generally limited to matters inquired into by the adverse party on cross-examination.").

{¶40} Appellant's fourth assignment of error is without merit.

{¶41} Based on the opinion of this court, the judgment of the Ashtabula County Court of Common Pleas is hereby affirmed.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.