OPINION
{¶ 1} Appellant, Charles Burrows ("Charles"), appeals the Portage County Probate Court's decision to remove him as guardian of the person and estate of Leone Burrows. For the reasons that follow, we affirm.
 {¶ 2} The Parties and their Relationship to the Ward Prior to theGuardianship
 {¶ 3} This appeal stems from the guardianship of Leone Burrows ("Mrs. Burrows") and the subsequent removal of her son Charles Burrows as guardian. *Page 2 
 {¶ 4} Mrs. Burrows was eighty-seven years old at the time the guardianship application was filed by Charles on October 27, 2005. In addition to Charles, Mrs. Burrows had four other children: Louise Kovar ("Ms. Kovar"), Willard Burrows ("Willard"), Denzil Burrows, and William Burrows. Teresa Beery ("Ms. Beery"), the movant, is Louise Kovar's daughter, who was raised in large part by her grandmother, Mrs. Burrows.
 {¶ 5} When Mrs. Burrows' husband died, he disinherited Charles and through his will devised one-half of the estate to Mrs. Burrows, including the family-owned real estate and the other half of the estate to his remaining children. Mrs. Burrows continued to live on the property in a mobile home. There were two other mobile homes located on the property. Ms. Beery lived in one of the mobile homes from age eighteen until age thirty-five when, in 2000, she moved away. She later returned and again resided in one of the mobile homes. On February 10, 1993, Mrs. Burrows transferred ownership of the real property to Ms. Beery, but retained a life interest in the property. Then, in 2003, Mrs. Burrows transferred ownership of the mobile homes to Ms. Beery.
 {¶ 6} Charles Burrows' Appointment as Guardian and Filing of Lawsuitsin that Capacity
 {¶ 7} On October 27, 2005, Charles Burrows filed an application with the Portage County Probate Court to be named guardian of his mother, Mrs. Burrows, on the ground that she suffered from Alzheimer's disease and was incompetent. The court appointed an investigator who issued a report and determined that a guardianship was necessary because Mrs. Burrows was unable to protect her assets or manage her *Page 3 
finances and needed assistance with medical issues. On November 15, 2005, the court appointed Charles Burrows guardian of the person and estate of Leone Burrows.
 {¶ 8} After being appointed guardian, Charles Burrows filed four lawsuits on behalf of the estate. The first lawsuit was brought on January 3, 2006, against Ms. Beery alleging that she fraudulently coerced Mrs. Burrows into quit-claiming to her the real estate. The complaint further alleged that she wrongfully took possession of Mrs. Burrows' real estate, chattels, cash and money instruments. Charles Burrows asked the court to set aside the real estate transfer.
 {¶ 9} The second lawsuit was filed on April 7, 2006, against a tenant who was renting one of the mobile homes from Ms. Beery. The complaint alleged that the tenant was delinquent in his rent payment.
 {¶ 10} In the third lawsuit, filed June 1, 2006, an eviction action was brought against Teresa Beery, Louise Kovar, and Michelle Beery, who Charles Burrows alleged were in wrongful and illegal possession of the property. He sought to remove these individuals and any unknown squatters from the two mobile homes that were not occupied by Mrs. Burrows.
 {¶ 11} The fourth lawsuit was brought on August 17, 2006, against Teresa Beery and Charles' siblings as an action for quiet title and partition of the real estate that had been transferred to Mrs. Burrows through her husband's estate, and which she subsequently transferred to Teresa Beery.
 {¶ 12} Motion to Remove Guardian
 {¶ 13} On June 13, 2006, Teresa Beery filed a motion to remove Charles Burrows as guardian. In the motion she alleged, inter alia, that Charles Burrows used *Page 4 
his position as guardian to destroy her relationship with her grandmother and to inappropriately file sham lawsuits. Ms. Beery asked the court to appoint a neutral third-party as guardian.
 {¶ 14} On September 18, 2006, the court conducted a hearing on Ms. Beery's motion to remove Charles Burrows as guardian. At the hearing, Ms. Kovar testified that prior to the guardianship, Mr. Burrows had little contact with their mother and that Ms. Beery was their mother's primary caregiver. Ms. Kovar further stated that Charles has isolated their mother since being appointed guardian.
 {¶ 15} Ms. Beery corroborated this testimony and stated that in the past Charles had been bitter toward his mother and was distant prior to the guardianship. Ms. Beery further testified that on occasion her grandmother's phone has been unplugged, making it difficult to reach her. She also testified that her grandmother is upset by the animosity in the family and is worried about the lawsuits filed by Mr. Burrows.
 {¶ 16} Charles testified that as guardian he has helped take care of his mother. He stated that he helped her with her finances by having her social security and Medicaid payments directly deposited into her bank account. With respect to the four lawsuits he filed on her behalf, he testified that he filed these actions because he believed money was being stolen from his mother. However, Charles admitted that prior to filing the lawsuits, he never spoke to his mother about the lawsuits and did not know whether there was any merit to the lawsuits.
 {¶ 17} The magistrate expressed concern at the hearing about the statements made by Mr. Burrows and whether he was able to exercise independent judgment as a *Page 5 
guardian. Mr. Burrows' counsel sought to introduce the testimony of Willard Burrows, but the court disallowed it.
 {¶ 18} Reasons Underlying Removal of Guardian
 {¶ 19} The magistrate issued his decision on September 21, 2006, and determined that it is in the ward's best interest to remove Mr. Burrows as guardian and to appoint an independent guardian in his place. The magistrate determined that the best interest of Mrs. Burrows could only be served by the appointment of a guardian who is "independent of any issues that may have plagued the Burrows family and will be able to act only in the ward's interest and not to vindicate any personal claims or issues." The magistrate's decision was based on the fact that "within the Burrows family there are personally rancorous issues among the family members * * *." In particular, the magistrate found that the pending lawsuits are of questionable merit and have only served to exacerbate the family tensions and have caused the ward significant distress.
 {¶ 20} Mr. Burrows filed objections to the magistrate's decision on the ground that the magistrate did not allow counsel to present the testimony of all witnesses and improperly considered a letter written by Mrs. Burrows. On November 27, 2006, the trial court issued its judgment entry overruling the objections and upholding the magistrate's decision to remove Mr. Burrows and to appoint a neutral person as guardian.[1]
 {¶ 21} In finding that it was necessary to appoint an independent guardian, the *Page 6 
court was similarly concerned that Mr. Burrows "made no effort to inquire of the ward either prior to or after the establishment of the guardianship as to whether there was merit to any of the claims that he is currently litigating [and that] * * * some of the litigation dates back twenty years ago concerning actions by the Portage County Probate Court in transferring real estate to the ward from her late husband's estate."
 {¶ 22} Appellant filed the instant appeal, raising three assignments of error:
 {¶ 23} "[1.] The magistrate and court did not permit a full hearing on all matters before the court.
 {¶ 24} "[2.] The magistrate and the court considered evidence outside the record.
 {¶ 25} "[3.] The magistrate and the court erred in removing the guardian because the evidence showed that the guardian was properly caring for the best interests of the ward."
 {¶ 26} Standard of Review
 {¶ 27} R.C. 2109.24 provides in pertinent part that "[t]he court may remove any fiduciary * * * for * * * neglect of duty, incompetency, or fraudulent conduct, because the interest of the property, * * * or estate that the fiduciary is responsible for administering demands it, or for any other cause authorized by law."
 {¶ 28} The removal of a fiduciary under R.C. 2109.24 is within the sound discretion of the trial court, and a reviewing court will not reverse that decision unless the lower court has abused its discretion.In re: Estate of Meloni, 11th Dist. No. 2003-T-0096, 2004-Ohio-7224, at ¶ 32, citing In re Estate of Jarvis (1980), 67 Ohio App. 2d 94, 97. "An abuse of discretion connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary, or unconscionable attitude on the part of the court." *Page 7 Quonset Hut, Inc. v. Ford Motor Co. (1997), 80 Ohio St.3d 46, 47, citingPembaur v. Leis (1982), 1 Ohio St.3d 89, 91.
 {¶ 29} Failure to Hold Full Hearing
 {¶ 30} In his first assignment of error, Mr. Burrows contends that his due process rights were violated by the trial court's decision not to allow his brother Willard to testify and to end the removal hearing abruptly. We disagree.
 {¶ 31} At the outset, we note that "[a] trial court's determination as to the admissibility of evidence is generally a matter within the sound discretion of the trial court." Davis v. Killing, 171 Ohio App.3d 400,2007-Ohio-2303, at ¶ 11, citing Schaffter v. Ward (1985),17 Ohio St.3d 79, 80. Thus, a trial court may exercise its discretion in admitting or excluding witnesses. In re: Morris, 12th Dist. No. CA2002-03-054, 2002-Ohio-5881, at ¶ 12.
 {¶ 32} Furthermore, with respect to the right to a full hearing, due process is satisfied when the court provides a party with a fair opportunity to be heard. "In defining the scope of an opportunity to be heard in the realm of a full hearing, the courts have held that such a hearing not only grants a defendant `the right to present evidence, but also a reasonable opportunity to know the claims of an opposing party and to meet them. * * * A `full hearing' is one where ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety of the step asked to be taken.'" City of Solon v. Geiger, 8th Dist. No. 87716,2006-Ohio-6032, at ¶ 13. While one of the fundamental due process rights is the right to present witnesses in one's own behalf, that right is tempered by judicial *Page 8 
discretion. In re: Houseman (Oct. 30, 1981), 4th Dist. No. 831, 1981 Ohio App. LEXIS 13378, 4.
 {¶ 33} In this case, Mr. Burrows wanted his brother, Willard, to testify concerning his knowledge of the four lawsuits filed on behalf of their mother. A review of the proceedings reveals that during Mr. Burrows' direct examination, he testified that Willard had mismanaged their mother's finances and had been stealing money from her. He also testified that he filed the four lawsuits without discussing the matter with his mother and essentially had no idea as to whether they were meritorious. It was at this point that the magistrate stopped the hearing. We find that the trial court's refusal to allow Willard to testify did not deprive Mr. Burrows of due process. Nor was it tantamount to an abuse of discretion.
 {¶ 34} To begin with, Mr. Burrows failed to proffer what Willard's testimony would have been, and therefore waived the right to argue this issue on appeal. "It is incumbent upon the party seeking to introduce the evidence, who has been temporarily precluded from doing so, to offer the evidence at trial when the issue is actually reached during the trial by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve the record for appeal. Evid.R. 103(A)(2)." Bloomfield v. Bloomfield, 3d Dist. No. 5-05-31, 2006-Ohio-5489, at ¶ 15. "[I]f no proffer is made, the party seeking to introduce the evidence in question waives the error on appeal." Id., citing Frazier v. Ullom Realty, Inc. (Feb. 13, 1998), 4th Dist. No. 97CA19, 1998 Ohio App. LEXIS 553.
 {¶ 35} However, even if the alleged error was preserved, we find that the trial court acted within its discretion in excluding this testimony. Because Mr. Burrows had *Page 9 
already indicated that he may have filed the lawsuits frivolously, what Willard knew regarding the lawsuits was immaterial to the issue of whether Mr. Burrows was fit to serve as guardian. What was relevant was Mr. Burrows' intent and actions as guardian. Since Mr. Burrows was able to testify on his own behalf and had the opportunity to cross-examine witnesses, he was able to present his arguments to the court as to why he filed these lawsuits. Thus, he was not deprived of due process.
 {¶ 36} We overrule appellant's first assignment of error.
 {¶ 37} With respect to the second assignment of error, Mr. Burrows argues that the trial court improperly considered a letter written by his mother in which she indicated that she did not want him to serve as guardian. Mr. Burrows claims that the magistrate's decision was based substantially on this letter and that the court committed prejudicial error by considering the letter.
 {¶ 38} While the magistrate indicated that it had "received correspondence from the ward expressing her dissatisfaction with the guardian" there is no indication that the letter was the impetus behind the court's removal of Mr. Burrows as guardian. In fact, the trial court, unlike the magistrate, specifically stated that it "considered the transcript of the proceedings, the written objections of Mr. Burrows, the exhibits admitted into evidence, and the oral arguments of counsel" but made no mention that it took into account the ward's letter at all.
 {¶ 39} Even assuming arguendo that the court considered the letter, the court's decision was not based upon this letter but was instead premised on its concern that Mr. Burrows was unable to exercise his independent judgment in fairly and adequately representing the ward. Specifically, the court was troubled by Mr. Burrows' decision to *Page 10 
file what appeared to be frivolous lawsuits to vindicate his own personal claims. However, even if we concluded that the trial court erred in considering the letter, the error would be harmless since there was additional information, separate and apart from the erroneously considered evidence that was offered to prove that the same point, that Mr. Burrows was not acting independently and was acting against the best interest of the ward, and was causing the ward distress. Shull v.Itani, 11th Dist. No. 2002-L-163, 2004-Ohio-1155, at ¶ 44.
 {¶ 40} Appellant's second assignment of error is without merit.
 {¶ 41} In his third assignment of error, appellant contends that removal was improper because there was no evidence in the record to show that he was not acting in the ward's interest. To the contrary, he argues that the evidence shows that the lawsuits were brought with the ward's interest in mind in order to recoup "property embezzled and conveyed away by the petitioner."
 {¶ 42} In considering the trial court's findings and in applying the abuse of discretion standard, as a reviewing court we may not substitute our judgment for that of the trial court. In re: Radcliffe-Umstead, (Mar. 25, 1994), 11th Dist. No. 93-P-0040, 1994 Ohio App. LEXIS 1312, at 4. Therefore, we must examine the record to see if the judgment of the trial court was unreasonable, arbitrary or unconscionable. Id. In so doing, we are mindful that the probate court is granted considerable discretion with regard to the removal of fiduciaries.
 {¶ 43} In determining whether removal is warranted, "it is discretionary with the probate court as to whether the guardian should be removed, and such removal may be based upon any just cause when the interest of the trust demands it. The probate court *Page 11 
need not find that the guardian's action amounted to violations of the law or that his actions caused injury to the ward's estate. To warrant removal, the probate court need only find that the best interests of the ward will be served by the guardian's removal." In re: Connell (Aug. 24, 1995), 8th Dist. No. 6826, 1995 Ohio App. Lexis 3470, at 11-12, citingIn re: Escola (1987), 41 Ohio App.3d 42, 44. (Citations omitted.)
 {¶ 44} In this case, the probate court determined that it was in the ward's best interest that a neutral guardian be appointed in Mr. Burrows' place. We cannot say that the probate court's decision was arbitrary, unreasonable, or unconscionable. Although Mr. Burrows was able to testify that he brought the lawsuits to recoup monies owed to the ward, there was other evidence in the record that demonstrated that the filing of the lawsuits was tenuous at best, and that the litigation may have been brought to harm other family members and to undo what Charles' father sought to do, namely, to disinherit Charles from his will. The underlying nature of the lawsuits, to evict family members and to set aside the later transfer of the real estate to Ms. Beery supports this conclusion.
 {¶ 45} The decision of whether to remove a guardian for his or her failure to act as an unbiased fiduciary is within the court's discretion under R.C. 2109.24. In re: Estate of Knowlton, 1st Dist. No. C-050728,2006-Ohio-4905, at ¶ 32. The trial court, as the trier of fact, is in the best position to observe the witnesses, weigh the evidence, and evaluate the testimony. Id. at ¶ 35. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate *Page 12 
ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Id., citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 81.
 {¶ 46} Here, the trial court, after listening to the testimony of the witnesses and evaluating their credibility, concluded that Mr. Burrow was unable to serve as an unbiased guardian and to act in the ward's best interests. Based on the evidence presented, this court finds no abuse of discretion with the probate court's decision to remove appellant as guardian.
 {¶ 47} Appellant's third assignment of error lacks merit.
 {¶ 48} The judgment of the Trumbull County Court of Common Pleas, Probate Court is affirmed.
CYNTHIA WESTCOTT RICE, P.J., TIMOTHY P. CANNON, J., concur.
[1] Appellant had filed an earlier appeal, which this court dismissed as being premature since appellant had appealed the trial court's judgment entry that had merely adopted the magistrate's decision. In Re:Burrows, 11th Dist. No. 2006-P-0105, 2007-Ohio-691. *Page 1